**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------------X

Roy Reese and Dolores Terlecky,

                       Plaintiffs,

        -against-

Tuxedo Union Free School District,

                       Defendant.
------------------------------------------------------------------X

23-cv-9442

**OPINION & ORDER**

**VICTORIA REZNIK, United States Magistrate Judge:**

       This dispute arises out of an employment discrimination case in which the Plaintiffs claim that the Defendant illegally terminated their employment based on their age. (ECF No. 4 (Amended Comp.)). On October 28, 2024, the parties filed a joint letter requesting a conference with the Court to resolve a discovery dispute about the applicability of the executive meeting privilege or attorney-client privilege to communications between and among Board members during an executive session of the School Board. (ECF No. 33). The Court granted the parties' application and scheduled a conference on November 6, 2024, but directed the parties to file a joint status letter outlining the parties' respective positions. (ECF No. 37). At the conclusion of the conference, the Court directed Plaintiffs' counsel to submit his intended line of questioning to the Court and directed Defendant to file an affidavit stating their attorney's role during the executive meetings in question. (*Id.*).

1

For the reasons explained below, the Court **GRANTS in part and DENIES in part** Plaintiffs' request to depose witnesses on the matters discussed during the executive meetings at issue.

## BACKGROUND

In the parties' initial joint letter, Plaintiff explained that during a deposition of the former Board of Education President, Joseph Rickard, defense counsel objected to "the witness answering questions about the content of any conversations had *between Board members* [emphasis added] during executive sessions of Board meetings where counsel was present." (ECF No. 33). According to defense counsel, such communications were protected by the attorney-client privilege. (*Id.*).

Plaintiff further explained in subsequent briefing that such objections arose when counsel asked the witness if "he ever heard anyone comment about plaintiff Roy Reese's age." (ECF No. 36). And while the witness answered that he had, defense counsel objected to further questioning on this topic because the discussion took place during an executive session at which counsel was present. (*Id.*). According to Plaintiff, the attorney-client privilege is not applicable here because the communications were not made for the predominant purpose of soliciting or obtaining legal advice. Plaintiff also argues that there is no federal executive session privilege (an issue raised by Defendant in subsequent briefing and not at the deposition) and this Court should not apply any analogous state-law privilege. (*Id.*).

In response, defense counsel confirms that they "directed Mr. Rickard to not answer any questions regarding discussions had during executive session when the District's General Counsel was present." (*Id.*). In support of their argument, Defendant relies on an analogous case they argued in this district, in which the presiding judge (Judge McCarthy) ruled in their favor on a similar issue. (ECF No. 36-1). In that case, Judge McCarthy found that "it is undisputed to the extent that counsel was in attendance at the [executive session] meeting and legal advice was sought or rendered regarding plaintiff's lawsuit or employment status, such communications would be privileged where the predominant purpose was to obtain such legal advice." (*Id.* at 50, citing *In re Cnty. of Erie*, 473 F.3d 413, 420 (2d Cir. 2007)). Defendant also argues that answering questions about the contents of executive meetings might put the witness in a position of violating their ethical obligations due to certain provisions of the General Municipal Law. (ECF No. 36).

At the Court's direction, the parties filed supplemental submissions in support of their respective positions. On November 13, 2024, Defendant submitted an affirmation from David Shaw, counsel for the Board of Education for Tuxedo Union Free School District. (ECF No. 38).[1] In that affirmation, counsel explains that they were "present for the executive sessions held on November 17, 2021 and June 21, 2023 to give legal advice on matters pending before the Board." (*Id.*). Counsel then explained that the purpose "of those executive sessions, at least in

---

[1] The Court notes that this is the same attorney that submitted an affirmation in the case cited by Defendant in their letter, *Buon v Newburgh Enlarged City School District, et al.,* 21-cv-5623 (S.D.N.Y. Jan 18, 2023) (denying plaintiffs' motion to compel as to communications that occurred during executive sessions where counsel was present).

3

part, was to provide legal advice to the Board regarding employment and personnel decisions," which included those related to Plaintiff. Finally, counsel wrote that within that context, "administrators may have provided evaluative information pertinent to the Plaintiff's employment with the District." (*Id.*).

For their part, Plaintiffs submitted their intended line of questioning for the Board and Superintendent, which seeks to ask questions about the basis of the decision to terminate their employment. (ECF No. 39).

## Discussion

### I. There is no Federal Executive Session Privilege Here

Defendant argues that communications made during an executive session should be shielded from discovery because permitting witnesses to divulge such communications may cause them to violate certain ethical obligations in connection with their employment. (ECF No. 36 at 5). While there is an executive session privilege under New York Law, the "executive session privilege . . . is not recognized under federal law." *McDonald v. Hempstead Union Free Sch. Dist.*, No. 18-CV-5658 (DRH)(SIL), 2021 U.S. Dist. LEXIS 267240, at *9 (E.D.N.Y. Mar. 24, 2021) (citing *Rattner v. Netburn*, No. 88-cv-2080, 1989 WL 223059, at *12 (S.D.N.Y. June 20, 1989)). Indeed, state law privileges are "not absolute in federal court, especially when a federal question forms the basis for federal jurisdiction." *Fortunatus v. Clinton Cty.*, No. 8:12-CV-458 (RFT), 2012 U.S. Dist. LEXIS 143108, at *18 (N.D.N.Y. Oct. 2, 2012). In *Fortunatus*, the Court laid out five factors to consider when there is a state privilege claim in a case based on a federal question. (*Id.*).

4

They are: (1) the relevance of the evidence sought to be protected; (2) the availability of other evidence; (3) the seriousness of the litigation and the issues involved; (4) the role of the government in the litigation; and (5) the possibility of future timidity by government employees who will be forced to recognize that their secrets are violable. (*Id.*) (citing *In re Supboena Duces Tecum on Office of Comptroller*, 145 F.3d 1422, 1425 (D.C. Cir. 1998)). But, "the Court need not engage in this balancing test if the decision-making process itself is the central and pivotal subject of the litigation." *Fortunatus,* 2012 U.S. Dist. LEXIS 143108, at *21.

Here, Plaintiffs' litigation squarely focuses on the Board's decision—and the underlying considerations—to terminate their employment. Plaintiffs allege in their amended complaint that "Board President Rickard collaborated closely with Superintendent White, and the two men discussed important personnel matters before implementation of any decision like the termination of an administrator." (ECF No. 4 at ¶ 13). And as evidenced by the Plaintiffs' proposed questioning, several of the inquiries are directed at the decision-making process around the Board's decision to terminate the Plaintiffs.

For instance, the Plaintiffs intend to ask whether the Superintendent provided the Board with any explanation for his decision to recommend Plaintiffs' termination, whether the Board questioned that recommendation, what information the Board relied on in accepting the recommendation, and if anyone heard or made any comments about Plaintiffs' age. (ECF No. 39). These questions directly target the process the Board used to arrive at its decision to terminate the Plaintiffs. *See*

5

*McDonald*, 2021 U.S. Dist. LEXIS 267240, at *11 (finding that decision-making process was central reason for litigation because deposition was focused on Board's discussions in executive session related to Plaintiff's employment and termination). As such, the Court finds that it need not engage in a balancing of the *Fortunatus* factors.

But even if the Court applied the *Fortunatus* factors, the executive session privilege would still not apply. The Board Members' testimony is relevant as it addresses the central question of the lawsuit (*i.e.,* why the Defendant decided to terminate the Plaintiffs). According to the conference held on November 6, 2024, other evidence of the executive session's contents is not available, as the Board does not keep minutes of what was said. (ECF No. 37). This litigation is serious, as it deals with the Plaintiffs' employment, potential discrimination against the Plaintiffs, and the Board's role in terminating the Plaintiffs' employment in the interest of hiring allegedly younger employees. Lastly, the risk to future governmental communications is small because, as explained below, the limited nature of the information sought—and the narrow ruling here—would not likely make government employees timid about sharing their views in future executive sessions.

6

## II.     The Attorney-Client Privilege Applies but Narrowly

Under federal common law,[2] "the attorney-client privilege protects communications (1) between a client and his or her attorney (2) that are intended to be, and in fact were, kept confidential (3) for the purpose of obtaining or providing legal advice." *United States v. Krug*, 868 F.3d 82, 86 (2d Cir. 2017) (alteration omitted); *accord In re Spalding Sports Worldwide*, 203 F.3d 800, 805 (Fed. Cir. 2000). "The underlying purpose of the attorney-client privilege is 'to encourage full and frank communication between attorneys and their clients.'" *Krug*, 868 F.3d at 86 (quoting *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981)). "As a result, the attorney-client privilege creates a rule of confidentiality that 'recognizes that sound legal advice or advocacy serves public ends and that such advice or advocacy depends upon the lawyer's being fully informed by the client.'" *Id.* (quoting *Upjohn*, 449 U.S. at 389). "In order to balance this protection of confidentiality with the competing value of public disclosure, however, courts apply the privilege only where necessary to achieve its purpose and construe the privilege narrowly because it renders relevant information undiscoverable." *Id.* To that end, the party claiming the privilege has the burden of establishing the essential elements of the privilege. *Id.*

But the attorney-client privilege protects "only legal advice, not economic, business, or policy advice." *Durling v. Papa John's Int'l, Inc.*, No.

---

[2] Where, as here, subject matter jurisdiction is grounded on a federal question, privilege issues are governed by federal common law.  *See* Fed. R. Evid. 501.

7

16CIV3592CSJCM, 2018 WL 557915, at *3 (S.D.N.Y. Jan. 24, 2018) (quoting *Fox News Network, LLC v. U.S. Dep't of Treasury*, 911 F. Supp. 2d 261, 271 (S.D.N.Y. 2012)). Indeed, the test for whether a communication that contains both legal and non-legal advice is privileged is "whether the predominant purpose of the communication is to render or solicit legal advice." *Durling,* 2018 WL 557915, at *3 (quoting *In re Cnty. of Erie*, 473 F.3d 413, 420 (2d Cir. 2007)). "The predominant purpose should be assessed dynamically and in light of the advice being sought or rendered, as well as a relationship between advice that can be rendered only by consulting the legal authorities and advice that can be given by a non-lawyer." *Erie,* 473 F.3d at 420-421.

When "an attorney is consulted in a capacity other than as a lawyer, as (for example) a policy advisor, media expert, [or] business consultant . . . that consultation is not privileged." *Id.* at 421. That is because such consultations do not always implicate the "interpretation and application of legal principles to guide future conduct or to assess past conduct" central to the privilege. *Id.* at 419. Instead, the attorney-client privilege "requires a lawyer to rely on legal education and experience to inform judgment." *Id.* By extension, "the mere presence of counsel during a discussion, even one allegedly protected by the attorney-client privilege, does not automatically preclude disclosure of the discussion's underlying facts." *McDonald*, 2021 U.S. Dist. LEXIS 267240, at *13 (citing *Serin v. Northern Leasing Systems, Inc.*, No. 7:06-cv-1625, 2010 WL 6501666, at *2 (S.D.N.Y. Oct. 6, 2010)).

8

Although whether a communication between client and counsel is privileged often arises in the context of "communications to and from corporate in-house lawyers who also serve as business executives," courts have also considered privilege issues as they relate to local government attorneys. *Erie,* 473 F.3d at 419. Indeed, in "civil suits between private litigants and government agencies, the attorney-client privilege protects most confidential communications between government counsel and their clients that are made for the purpose of obtaining or providing legal assistance." *Id.* at 418.

Here, Defendant claims that the witnesses should be protected from disclosing the contents of discussions during the executive sessions because "District Counsel was present for both of those executive sessions [and] that the Board entered executive session" to discuss and obtain guidance on personnel and employment decisions. (ECF No. 36).

But applying the standards outlined above, the Court finds the attorney-client privilege does not shield from discovery the entirety of the Board's discussions during the executive sessions. The affirmation that Defendant submitted fails to establish that the predominant purpose of the Board's communications during the executive sessions was for the Board to seek or receive legal advice in connection with Plaintiffs' employment. Instead, the document offers equivocal and ambiguous language. The affirmation declares that counsel was "present for the executive sessions held on November 17, 2021 and June 21, 2023 to give legal advice on matters pending before the Board." (ECF No. 38-1 at 3). But it then explains that

9

the "purpose of those executive sessions, *at least in part*, was to provide legal advice to the Board regarding employment and personnel decisions, including those related to Plaintiff." (*Id.*)(emphasis added). The Court finds these statements to be ambiguous. They do not illustrate that the *predominant* purpose of the Board's discussion was to solicit legal advice from counsel, or for counsel to provide legal advice regarding Plaintiffs' employment.

Defendant's other submissions do not bring any clarity to the issue, either. For instance, Defendant submits two sets of minutes from the board meetings in dispute. (ECF No. 36). Exhibit B outlines the agenda for the November 17, 2021, meeting, with item number 10 indicating that the Board entered into executive session to "discuss the employment history of an individual." (ECF No. 36-2 at 8). Exhibit C outlines the agenda from the June 21, 2023, meeting (ECF No. 36-3 at 2) but makes no direct mention about the subject matter to be discussed during the executive session. None of these entries refer to obtaining or soliciting legal advice, let alone indicate that this was the predominant purpose of those meetings. Thus, without more, the Court cannot find that Defendant has satisfied its burden here.

The Court recognizes that at some point during the executive session, counsel may have provided legal advice to the Board regarding Plaintiffs' employment or answered questions posed by members of the Board. The attorney-client privilege would protect those communications. But it does not follow that any and all discussions among Board members about the underlying facts relating to Plaintiffs'

employment should be so covered, unless the predominant purpose of those discussions was to solicit legal advice from counsel.

And while the exhibits—as well as counsel's affidavit—make clear that counsel was present at these meetings, as noted above, the mere presence of counsel during a discussion, even one allegedly protected by the attorney-client privilege, does not automatically preclude disclosure of the discussion's underlying facts. *McDonald*, 2021 U.S. Dist. LEXIS 267240, at *13. Based on the parties' submissions, it appears that during the executive sessions, the Superintendent presented his recommendation to the Board about Plaintiffs' terminations, and Board members expressed their views and asked questions of the Superintendent, to which the Superintendent responded. But there is no evidence that the *predominant* purpose of the discussions among the Superintendent and Board members about Plaintiffs' employment was to solicit legal advice from counsel. To be sure, those factual discussions may have helped inform any legal advice provided by counsel. And perhaps part of the purpose of the Board's communications may have been to solicit legal advice. But the fact that counsel may have relied on those discussions to inform his legal advice does not automatically shield all discussions between and among the Superintendent and Board members from discovery. If that were the case, all facts would be shielded from discovery, so long as counsel relied on them to inform his or her legal advice.[3]

---

[3] During the last conference with the parties, the Court pointedly asked Plaintiff's counsel whether this sort of evidence could be obtained outside of the executive session and what, if any, discovery he had received to date. Although counsel stated he had obtained some relevant deposition testimony,

11

For these reasons, Defendant's reliance on *Buon* does not apply. In that case, counsel filed an affidavit in support of the Defendant's privilege claim explaining that they "could recall no executive session in which Plaintiff was discussed in any context other than to obtain legal advice for purposes of employment matters or her pending litigation." *Buon v. Newburgh Enlarged City Sch. District, et al.,* 21-cv-5623 (S.D.N.Y. Jan. 18, 2023) (ECF No. 68-1). The affirmation goes on to assert that "to the extent Plaintiff was discussed during executive sessions of the Board, those discussions were for purposes of obtaining advice from counsel." (*Id.*). No such clear declarations exist here.

The Court thus finds that Defendant has not met their burden to establish that the predominant purpose of communications relating to Plaintiffs' employment during the executive sessions was to obtain or solicit legal advice. As such, Plaintiffs can ask the questions outlined in their letter, with one exception. (ECF No. 39). Any communications that were directed to the lawyer—or that the lawyer responded to, including the lawyer's own communications—may still be covered by the attorney-client privilege. Thus, Defendant may still raise attorney-client objections to specific questions if appropriate.

## CONCLUSION

For the reasons explained above, the Court **GRANTS in part and DENIES in part** Plaintiffs' request to depose witnesses on the matters discussed during the

---

he stated that there was otherwise no way to obtain evidence about Board member conversations about his clients' employment to the extent those conversations primarily took place during the executive session.

executive meetings at issue. (ECF No. 38). The Clerk of Court is respectfully directed to close out the gavels at ECF Nos. 33, 36, and 38. Additionally, the parties are directed to file a joint status letter by no later than January 10, 2025. The letter should update the Court on the status of discovery, including what steps the parties have taken, what still remains, and identify any potential disputes.

**SO ORDERED.**

DATED:   White Plains, New York
            December 17, 2024

                                      VICTORIA REZNIK
                                      United States Magistrate Judge